# Wright *v.* Allegheny County Retirement Board, Appellant.

Argued March 28, 1957. Before BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused August 21, 1957.

*John B. Hester*, for appellant.

*John A. Metz, Jr.*, with him *Metz, McClure & Mac-Alister*, for appellee.

OPINION BY MR. JUSTICE COHEN, June 6, 1957:

This appeal by the Retirement Board of Allegheny County comes to us from a judgment of the Court of Common Pleas of Allegheny County en banc causing a writ of mandamus to issue against the Retirement Board. The writ required the defendant Board to permit repayment by the plaintiff, Wright, of certain amounts he had previously withdrawn from the County Employes Retirement Fund, and, upon receipt thereof, to pay Wright the required "service increment" as provided for in the 1955 amendment to the County Employes' Retirement System Law. Act of May 31, 1955, P. L. 111, 16 P.S. §§4701-4716.

In 1924, William Wright became an employe of Allegheny County, and a member of the Second Class

County Employes' Retirement System in accordance with the terms of the Act of May 8, 1919, P. L. 138. Wright left the employ of the county in 1932, and withdrew the contributions he had made to the retirement fund during the years 1924-1932 which amounted to $142.39. Subsequently, in 1933, he was reemployed and continued as an Allegheny County employe until his involuntary separation on January 31, 1956. In 1933, when he was reemployed, the retirement system was governed by the Act of May 2, 1929, P. L. 1278, which did not change the earlier law of 1919. During this latter period of 22 years, (1933-1956), Wright made regular contributions to the retirement fund, but never repaid the monies he had withdrawn after his first term of service had ended.

The relevant provisions of the retirement acts of 1919 and 1929 stated that every county employe who had completed 20 years of service and had obtained the age of 50 was to receive a pension equal to fifty percent of his average salary.[1] Upon demand, an employe was entitled to a refund of all sums he had contributed to the system.[2] However, any employe who had availed himself of this right of refund could be reinstated and again become a beneficiary "by the payment in full of the amount withdrawn" and by continuing to pay the regular assessments set forth in the law.[3] *Neither the Act of 1919 nor the Act of 1929 limited the time within which an employe could repay withdrawn contributions and thus qualify for the benefits provided by the acts.*

---

[1] Act of May 8, 1919, P. L. 138, §§10, 12; Act of May 2, 1929, P. L. 1278, §§320, 322.

[2] Act of May 8, 1919, P. L. 138, §14; Act of May 2, 1929, P. L. 1278, §324.

[3] Act of May 8, 1919, P. L. 138, §15; Act of May 2, 1929, P. L. 1278, §325.

In 1955, the legislature granted eligible employes a new type of benefit in addition to the retirement allowance, namely, a "service increment" of five percent of the annual retirement allowance for each year over 20 in which an employe made contributions to the fund.[4] To be eligible for this additional benefit an employe was required to *repay by January 1, 1956 any amounts withdrawn.*[5]

On January 19, 1956, Wright discussed with the solicitor for the Retirement Board his desire to obtain additional service increments for the 8 years between 1924 and 1932 when he was first employed by the county, by repaying to the retirement fund the $142.39 which he had withdrawn in 1932. The solicitor advised him that the 1955 law barred his right to make such repayment after the first of January, 1956. Subsequently, after Wright was involuntarily retired, the Board refused his tender of repayment, and Wright thereupon instituted the present action.[6]

---

[4] Act of May 31, 1955, P. L. 111, §1, as amended, 16 P.S. 4712(b).

[5] ". . . Any person who has ceased to be a county employe and whose contributions as paid into the retirement fund, have been refunded by the board, if such person has been reemployed by the county . . . prior to the first day of August, one thousand nine hundred fifty-three, and desires to be given credit for previous service as a county employe, *he or she shall, prior to the first day of January, one thousand nine hundred and fifty-six, make payment in full of the amount refunded.* . . .

. . .

"*Full payment thereof shall be a condition precedent to the county employe being eligible to receive the benefits of . . . a service increment,* if any." Act of May 31, 1955, P. L. 111, §1, 16 P.S. 4715(a). (Emphasis supplied).

[6] The lower court held that in view of the solicitor's advice to Wright, his tender would be considered timely although made after his employment had terminated. Only for purposes of this appeal we will so assume.

We have said, and now reaffirm, that a public employe has a contract right to continued membership in a retirement fund, under the same rules and regulations prevailing at the time of his employment, which may not be qualified or altered by subsequent legislative enactment, *Baker v. Retirement Board of Allegheny Co.*, 374 Pa. 165, 169, 97 A. 2d 231 (1953).[7]

The reason for this pension rule in Pennsylvania[8] is that a public employe's compensation includes pension credits as well as salary. Accordingly, one who has rendered service for this agreed compensation has earned both his salary and his pension rights.[9] The Commonwealth can no more impair its contractual obligation by legislation unilaterally altering the terms of the pension it agreed to give to those in its service than it can by legislation abrogating its duty to pay in full the accrued salary of its employes.

The plaintiff maintains that the rights conferred upon him by the Acts of 1919 and 1929 to make repayment at any time of funds withdrawn from the retirement system were, under the Pennsylvania pension doctrine, unalterable and unqualified, and could not be disturbed by future enactments. We agree with this contention; Wright's privilege to make this reimbursement could not be modified.

---

[7] The apparent inconsistency between this holding of *Baker* and the statement in *Hickey v. Pittsburgh Pension Board*, 378 Pa. 300, 302, 106 A. 2d 233 (1954) that pension rights vest after all required contributions are made, has aroused some concern. E. g., Annotation, 52 A.L.R. 2d 475 (1957). However, this language in *Hickey* must be read in light of the correct statement of the law which appears earlier in the opinion at 304.

[8] For a collection of the views held in other jurisdictions, see Annotation, 52 A.L.R. 2d 437 (1957).

[9] *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 Atl. 400 (1934) (The distinction between "retirement allowance" and "pensions" therein made has become obsolete).

But, plaintiff construes the 1955 Act's requirement for obtaining service increments as an infringement of his unlimited repayment rights. Therein lies his error. The 1955 Act does not prevent Wright from repaying at any time the money he withdrew from the retirement fund; it merely requires that such repayment must be made prior to the stipulated date of January 1, 1956, *in order to qualify for the newly granted service increment first provided for in the Act of 1955.*

The Commonwealth was in no way obligated to provide additional pension benefits in the form of service increments or otherwise, and the plaintiff had no existing contract right to the new benefits which the legislature conferred in 1955. It follows, therefore, that the legislature might make compliance with such conditions precedent as it saw fit to impose a prerequisite for obtaining the service increments. Since Wright had not complied with the condition precedent required in the Act, the Board properly refused to award him the sum he sought.[10]

The judgment of the court below is reversed. Costs to be paid by the Retirement Board of Allegheny County.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I dissent on the learned, comprehensive, and authoritative argument of the able Judge ALPERN who wrote the opinion for the Court below.

---

[10] Technically, the solicitor erred in advising Wright that the 1955 Act cut off his repayment rights. However, since Wright was already eligible to receive the maximum pension allowance to which he had become entitled under the several retirement acts, his tender of repayment, even if accepted by the Board, would not have benefited Wright in any way. For this reason the error was in no way prejudicial.