## Reiter v. Firemen's Pension Fund of the City of Sharon

*Nathan Routman*, for plaintiff.

*W. Allen Dill*, for defendant.

McKay, P. J., June 5, 1967.—This is an action, presumably in mandamus,[1] filed by the executor of the will of Frank Reiter to compel the Firemen's Pension Fund of the City of Sharon to pay him $4,918.63, that being the balance alleged to be in a special account in Reiter's name in said fund at the time of his death on December 10, 1966, and now due to his estate. The case is before the court on motion of plaintiff for judgment on the pleadings.

---

[1] No subject is mentioned in the caption of the complaint, but the pleadings indicate that mandamus is intended as the form of action.

Both parties rely upon the decision and the language in the opinion in the case of Taylor v. Abernathy, 422 Pa. 629,[2] decided December 27, 1966. Plaintiff contends that the instant case is identical with one of the four, viz., King v. Firemen's Pension Fund of Sharon, March term, 1965, no. 186, and defendant contends that the King decision must be limited to the cases then before the court, since they were decided for a special reason.

Reiter was employed by the City of Sharon as a fireman from 1927 to March 1958, when he retired. During this period, he contributed three percent of his salary to the pension plan,[3] which had been set up for Sharon firemen under an ordinance which the Taylor case held to be invalid, being without statutory authority. Under the plan, the city made deductions from the fireman's wages each month and credited them, along with a contribution from the city and the State, to an individual account standing in the name of that fireman. During the fireman's active service, this account was merged with similar accounts of the other firemen for investment purposes, but upon retirement, the retiree's individual account was again segregated and from it he received an agreed sum per month, not less than $50 per month nor more than one-half his salary. When the individual fund was exhausted, the fireman received nothing more by way of retirement allowance, and if he died before the account was exhausted, the balance was paid to his widow, minor children or estate.

In the Taylor case, in which the King case related to the widow of a fireman, the Supreme Court held

---

[2] In fact, that case consisted of four consolidated cases, all dealing essentially with the same subject matter.

[3] He contributed from his salary $7,024.46. After his retirement, he was paid $13,552.50.

that while the Sharon plan was invalid, and that no contractual rights were created by it, Mrs. King, the widow of the deceased fireman, was entitled to the money in his segregated account at the time of his death "in order to return the parties to a reasonable approximation of where they might have been had the city not adopted an invalid pension plan. . . ."[4]

The problem in the instant case, of course, is whether the Miller and King cases control the case at bar so that the firemen's fund should now be compelled to resegregate the Reiter special account as of the date of his death and pay it over to his executor.

At first glance, it would seem that the present situation is identical with the King and Miller cases, and that the payment must be ordered.

Conceding that Miller and King had no contractual right to their segregated funds because the Sharon ordinance was invalid, the Supreme Court, nevertheless, under its powers of Kings Bench, or, in a sense, to do broad justice, ordered the payments made in those cases. As Mr. Justice Roberts stated in the Miller case, at page 642:

"We are unwilling to permit the city to thwart her justifiable expectations (of retirement benefits and death benefits to her family) after she has passed away".

Should we not do the same in the Reiter case? Did not Reiter also make payments during his service in good faith and in reliance upon the city's retirement ordinance, albeit it was utterly invalid because it lacked legislative sanction?

And yet, the court in the Taylor cases not only dealt with the specific questions which were before it, but it

---

[4] In this quotation, the court was dealing with the Miller case, a policewoman's fund, but the case makes it clear that the problem was the same for both policemen and firemen, and the court decided the King case cursorily on the authority of the Miller case.

undertook to guide the city how to proceed from then on to prevent further unjust situations from arising. Among other things, it expressly directed council to proceed to pass a valid retirement ordinance which would comply with the State law as well as the Taylor opinion. In so doing, it may well have assumed that there would be no substantial delay in complying with this order and that, in the meantime, no further deaths would occur. Unfortunately, at the time Reiter died, no valid ordinance had been introduced and, hence, none was in effect at the time of his death. Does this fact require that his segregated fund be treated the same as Miller's and King's, who had already died when the Taylor case was decided? Or was the court undertaking merely to do justice in the cases immediately before it, and assuming that all future cases, including such a one as Reiter's, would not receive the special treatment that Miller and King had received?

To answer this question, we must look further into the language of the majority opinion. On page 645 Mr. Justice Roberts states:

"In the situation involving *living* members of the Sharon Police Department (and Fire Department members would be in the same category), *regardless of whether they have retired*, qualified for retirement under the invalid plan, or not yet met the conditions for retirement imposed thereunder, the expectations created under the invalid pension plan can be protected in a manner more consistent with the interests of all involved. The city has been ordered to adopt a valid pension plan in compliance with the enabling act. Thus, the *living members* of the police department, *including those who have already retired*, will be included within the new plan and entitled to the benefits thereunder".

And, more important, on page 646, the opinion states:

"We therefore hold that the city *may utilize the balance* remaining in the invalid pension plan to fund its new pension system. . . ."

When the Taylor cases were filed and tried, concerning which these words were written, Reiter was a *living, retired* member of the fire department. And how could the city use the balance remaining in the invalid pension plan to fund a new pension system if the former fund is to be depleted by paying additional segregated funds from it to persons other than those involved in the Taylor cases?

Accordingly, it is our opinion that when the city solicitor, upon reading the Taylor decision, directed the elimination of all segregated funds other than those involved in the Taylor cases, and the merging of the remaining pension funds, including that of Reiter, into the general fund as a nucleus for the new pension plan about to be formed, he followed the mandate of the Supreme Court, and all special, formerly segregated funds, such as Reiter's, may not now be resegregated so as to deplete that fund.

ORDER

Now, June 5, 1967, it is ordered that judgment in the above-entitled case be entered in favor of defendant.