985 A.2d 745

**WHITE DEER TOWNSHIP, Appellee**

v.

**Charles NAPP, Helen Napp, Leonard Caris, Doris Caris, Charlotte Hartranft and Donald Bird, Appellants.**

Supreme Court of Pennsylvania.

Argued Dec. 3, 2008.

Decided Dec. 28, 2009.

564

Jeffrey C. Dohrmann, Pamela L. Shipman, Williamsport, for C. & H. Napp, L. & D. Caris, C. Hartranft & D. Bird.

Timothy James Nieman, Robert J. Tribeck, Rhoads & Sinon, L.L.P., Paul J. Bruder, Jr., Harrisburg, for White Deer Township.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## OPINION

Justice BAER.

We granted allowance of appeal to determine whether a township's challenge to a board of supervisors' authority to enact an ordinance is procedurally time barred, and, if it is not, whether the board of supervisors of a second class township is authorized by the Second Class Township Code to provide post-retirement medical insurance, supplemental to Medicare, to supervisors who are also employees and who have been employed by the township for a minimum of twenty years. As to the first question, we conclude that the Commonwealth Court properly held that the township's challenge is not procedurally time-barred. Regarding the second question, we conclude that the board of supervisors has the authority to provide auditor-approved, post-retirement medical insurance to its supervisor-employees with twenty years of service, and, thus, respectfully reverse the Commonwealth Court.[1]

White Deer Township (Township) is a municipality organized under the provisions of the Second Class Township Code (Township Code), Act of May 1, 1933, P.L. 103 (as amended 53 P.S. § 65101–68701). Appellant Charles Napp was a Township supervisor from January 1, 1965 through December 30, 1997, and an employee of the Township from January 2, 1968 through December 30, 1997. Appellant Leonard Caris served as a Township supervisor from January 1, 1965 through December 30, 1997, and was employed by the Township from January 1, 1969 through December 30, 1999.[2] Carl Hartranft (deceased) served as a Township supervisor from January 3, 1978 through June 10, 1998, and was employed by the Township from January 3, 1978 through June 10, 1998. Appellant

1. Auditor approval is, briefly, the process of having an independent board of auditors determine the compensation of supervisors. *See* 53 P.S. § 65606. The independent board of auditors provides protection against supervisors enriching themselves at township expense by setting their own compensation.

2. According to Appellants, Mr. Caris passed away during the pendency of this litigation.

Donald Bird was employed by the Township from 1985 through 2000.[3] Appellants Helen Napp, Doris Caris, and Charlotte Hartranft are the spouses of these former Township supervisor-employees.

On December 18, 1997, the Township supervisor-employees, consisting of Appellants Napp and Caris, as well as Hartranft, enacted Ordinance No. 4–97 (Ordinance), which established that the Township would provide medical insurance supplemental to that available under the Medicare program for all retired employees of the Township who had been employed by the Township for at least twenty years.[4] The supervisors had all been employees of the Township for twenty years when they enacted the Ordinance (with the exception of Hartranft, who reached his twenty years of service two weeks later, on January 3, 1998).

3. It appears that Mr. Bird was named in the complaint because, as the former Secretary for the board of supervisors, he attested to the Ordinance.

4. The Ordinance provided as follows:
WHEREAS WHITE DEER TOWNSHIP, UNION COUNTY, PENNSYLVANIA, has and continues to employ persons to perform services for the Township, and
WHEREAS, White Deer Township, Union County, Pennsylvania, desires to remain competitive in the workplace so that it may continue to attract qualified people to work for it, and
WHEREAS, White Deer Township, Union County, Pennsylvania, feels that medical insurance is a benefit that enhances its ability to attract qualified people as employees.
NOW THEREFORE, BE IT RESOLVED BY THE BOARD. OF SUPERVISORS, OF WHITE DEER TOWNSHIP, UNION COUNTY, PENNSYLVANIA, the same is Resolved by authority of the same that White Deer Township provide medical insurance for all retired employees of White Deer Township, who have been employed by White Deer Township, Union County, Pennsylvania, for at least twenty (20) years the same to be consecutive or non consecutive. The medical insurance to be provided shall be limited to medical insurance supplementing Medicare and shall be provided through such insurance carrier as White Deer Township, Union County, Pennsylvania, shall from time to time determine. To qualify for this benefit the employee must be eligible for and be covered by Medicare or any coverage equivalent to Medicare as may be established in the future. The cost of Medicare or its equivalent coverage shall be paid by the said employee.
R.R. 16a.

The Township Code provides that "[t]ownships shall be governed and supervised by boards of supervisors. Boards of supervisors shall consist of three members or, if approved by the electors under section 402(b), five members." 53 P.S. § 65601. The board of supervisors has the authority to provide insurance for its employees and supervisors pursuant to Section 1512(d) of the Township Code, which provides, in relevant part: "The board of supervisors may contract with any insurance company ... to insure its supervisors under section 606, employes and their dependents under a policy or policies of group insurance covering life, health, hospitalization, medical service or accident insurance." 53 P.S. § 66512(d). Section 606 provides for the provision of compensation to supervisors, specifically including those holding the dual roles of supervisor and employee, like Napp, Caris, and Hartranft, as follows:

§ 65606. Compensation of supervisors

(a) Supervisors may receive as compensation an amount established by ordinance.... Salaries are payable monthly or quarterly for the duties imposed by this act ... The compensation of supervisors, when employed ... in any employe capacity ... shall be determined by the board of auditors, at an hourly, daily, ... or monthly basis, which shall be comparable to compensation paid in the locality for similar services....

(b) Any benefit provided to or for the benefit of a supervisor employed by the township in any employe capacity under this act in the form of inclusion in a pension plan paid for in whole or in part by the township is compensation within the meaning of this act to the extent that benefit is paid for by the township and is determined by the board of auditors....

\* \* \*

(c) In addition to the compensation authorized under this section, supervisors while in office or while in the employ of

the township may be eligible for inclusion in township-paid insurance plans. . . .

53 P.S. § 65606(a)-(c).

Following the retirement of Appellant supervisor-employees, the new board of supervisors concluded that Appellants lacked the legal authority to enact the Ordinance, and that the new board of supervisors could properly repeal it. On January 6, 2004, the Township filed a declaratory judgment action asserting that Appellants represent all individuals who receive benefits under the Ordinance. The Township first sought a determination that there is no authority in the Township Code to support the provision of insurance benefits to retired employees generally, and then asserted alternatively that the provision of post-retirement medical insurance benefits to retired supervisors and their families in particular violated specific prohibitions of Section 606 of the Township Code.[5] Finally, the Township argued that it was able legally to repeal the Ordinance providing such benefits to its retired supervisor-employees and their families. Appellants filed a preliminary objection in the nature of a demurrer challenging the legal sufficiency of the complaint, alleging that the Township supervisors did, in fact, have authority to enact the Ordinance and that the Township could not terminate their or their families' benefits.

The trial court sustained Appellants' preliminary objection and dismissed the Township's complaint. *See White Deer Twp. v. Napp*, No. 04–0007, slip op. at 3 (C.P. Union June 30, 2004). Although not raised by either party, the trial court, in a footnote, questioned whether the Township was precluded from challenging the validity of the Ordinance because more than thirty days had passed since the Ordinance was adopted. *See* 42 Pa.C.S. § 5571(c)(5) (deleted 2008) (prescribing that "questions relating to an alleged defect in the process of enactment or adoption of any ordinance . . . shall be raised by appeal or challenge commenced within 30 days after the

5. The Township does not advance an argument directed particularly at the supervisor-employees' families independent the argument against the benefits for the supervisor-employees themselves.

intended effective date of the ordinance....."); *Borough of Nanty Glo v. Fatula,* 826 A.2d 58 (Pa.Cmwlth.2003) (holding that a municipality could not challenge the validity of the enactment of ordinances relating to pension benefits for retired police officers insofar as more than thirty days had passed since the ordinances had been enacted). Nevertheless, the trial court addressed the merits.

On the merits, to dispense with the Township's argument that the Township Code did not authorize the benefits at issue, the trial court relied on *Summers v. Com., State Ethics Comm'n,* 128 Pa.Cmwlth. 520, 563 A.2d 1295 (1989), where supervisor-employees voted in their supervisor capacities to provide group life insurance to all municipal employees (including themselves) while employed. The *Summers* court held that under the former version of Section 606(c)(1), auditor approval was not required for this type of benefit because the supervisors received the same benefits available to all employees and had not discriminated in favor of themselves.[6] *Summers,* 563 A.2d at 1296. The trial court read *Summers* as generally supporting the participation by supervisor-employees in health insurance plans without auditor approval, without recognizing a distinction between benefits received while employed and post-employment retirement benefits.

Addressing the Township's alternative argument, the trial court relied on *Newport Township v. Margalis,* 110 Pa. Cmwlth. 611, 532 A.2d 1263, 1265–66 (1987) to conclude that the Township could not repeal the Ordinance and eliminate the benefits provided thereunder. In *Newport Township,* a first class township provided its employees post-retirement health insurance, and then sought to revoke that benefit. The Commonwealth Court held that an employee who has complied with all conditions necessary to receive a retirement allowance cannot be adversely affected by subsequent legislation that changes the terms of the retirement contract. *Id.* at 1265. In reaching this conclusion, the Commonwealth Court noted that retirement benefits are deferred compensation resulting from an employee's labor, which cannot be abolished

6. Section 606(c)(1) was formerly 53 P.S. § 65515(c)(1) (1988).

or reduced after the employee has entered into the retirement system. *Id.* In accord with *Newport Township*, the trial court in the instant case held that the post-retirement medical insurance was deferred compensation for the supervisor-employees that the Township could not reduce or abolish after those supervisor-employees retired. Thus, the trial court held that the Ordinance was valid and could not be repealed by the new board of supervisors.

The Township appealed to the Commonwealth Court, and pursued only the arguments related to the status of Napp, Caris, and Hartranft as supervisors, but did not further advance the position that the Township lacked authority to provide post-retirement medical insurance benefits to retired employees generally.[7] Rather, the Township argued that, notwithstanding their employee status, because Napp, Caris, and Hartranft were also supervisors, they were precluded from receiving post-retirement medical insurance benefits otherwise available to other employees by Section 606(c) of the Code, 53 P.S. § 65606(c). The Commonwealth Court reversed the trial court. *White Deer Township v. Napp*, 874 A.2d 1258 (Pa.Cmwlth.2005) (*White Deer Township I* ). The court initially noted that when public officials have a direct pecuniary interest in a matter being voted on, the enabling legislation granting them the power to vote on such a matter must be strictly construed. *Id.* at 1261 (citing *Genkinger v. City of New Castle*, 368 Pa. 547, 84 A.2d 303, 306 (1951)). With this in mind, the court examined Section 606(c) and concluded that the language in this section limited supervisor eligibility to participate in a medical insurance program to the time the supervisors are "in office or while in the employ of the

---

7. Thus, the trial court's position that Township employees in general are eligible for post-retirement medical benefits became the law of the case because the Township failed to appeal it to the Commonwealth Court. *White Deer Township v. Napp*, 929 A.2d 671 (Pa.Cmwlth.2007) (*White Deer Township III* ). Notwithstanding the fact that the Township did not advance the position that the board of supervisors lacked authority to provide post-retirement medical insurance benefits to employees generally, the Commonwealth Court proceeded to address this argument, and, as discussed above, to reverse the trial court's conclusion in this regard.

township." *White Deer Township I*, 874 A.2d at 1263. Although this language is facially applicable only to supervisors, and despite the fact that the Township had not actually raised the argument that the board of supervisors lacked the authority to provide post-retirement medical insurance benefits to employees generally, the Commonwealth Court broadly found that according to Section 606(c), the board of supervisors could not provide medical insurance to retired employees generally. *Id.* ("the plain language of Section 606(c) provides that medical benefits are only available for current employees"). Because it concluded that Napp, Caris, and Hartranft, as supervisors, were not statutorily authorized to provide post-retirement medical insurance benefits to Township employees generally, the Commonwealth Court reversed the trial court and remanded with directions to enter declaratory judgment in favor of the Township.[8]

Upon Appellants' petition for allowance of appeal, this Court initially agreed to consider the question of "[w]hether the Second Class Township Code authorizes municipalities to provide post-retirement medical and health benefits to its employees." *White Deer Township v. Napp*, 586 Pa. 46, 890 A.2d 368 (2005) (granting allowance of appeal *per curiam* ). Upon further examination, however, we declined to utilize the case as a vehicle to resolve this question because we determined that it was not actually presented to the Commonwealth Court by the Township. *White Deer Twp. v. Napp*, 590 Pa. 300, 912 A.2d 781 (2006) (*White Deer Township II* ). We noted, however, that the Commonwealth Court's reliance on Section 606(c), which is applicable only to township supervisors, was unpersuasive on the issue of the availability of post-retirement medical benefits to employees generally. *Id.* at 784. We therefore enlarged our review to subsume the question of whether the Township Code prohibits the board of supervisors from providing post-retirement medical insurance benefits to its supervisors who are also employees. *Id.*

8. The Commonwealth Court did not address whether the Township's challenge was procedurally time barred.

Regarding whether Section 606 precludes supervisor-employees from receipt of post-retirement medical insurance benefits, Appellants advocated that supervisor-employees are entitled to such benefits as deferred compensation pursuant to Section 606(a), and that nothing in Section 606 precludes them from being compensated equally with all other employees simply because they are also supervisors. Addressing this argument, we observed that Section 606 generally is "designed to curtail decision making by local supervisors on matters affecting their own self interest." *White Deer Township II*, 912 A.2d at 785. In this regard, we noted that the provisions of Section 606 expressly limit the amount a supervisor may receive as compensation, *see* 53 P.S. 65606(a); shift the responsibility to determine the compensation of supervisor-employees to a board of auditors, *id.*; forbid supervisors from being compensated as employees for attending meetings of the board of supervisors, *id.*; prescribe that any change in salary, compensation, or emoluments of the elected office become effective at the beginning of the next term of the supervisor, *id.*; delineate specific parameters for supervisor participation in employee pension plans, including the requirement of auditor approval, *see* 53 P.S. § 65606(b); and control supervisor participation in township-paid insurance plans while in office or the township's employ, *see* 53 P.S. § 65606(c). In light of this design, we found that the legislature intended to limit self-interested decision-making by supervisors. *White Deer Township II*, 912 A.2d at 785.

Examining Section 606(c), we agreed with Appellants that it did not expressly forbid supervisor-employees from receiving post-retirement medical insurance benefits. *Id.* at 785. We noted, however, that this was not dispositive because the heart of the Township's challenge was that the Ordinance was passed to benefit the supervisors voting on it. We held that because Section 606(c) only pertains to what supervisors may receive while in office or in the employ of the Township, it "does not operate to control the conferral of post-retirement medical insurance benefits...." *Id.* Therefore, we concluded that the trial court erred in holding that Section 606(c) author-

ized the supervisors to confer post-retirement benefits on themselves. *Id.; accord Summers*, 563 A.2d at 1296–97 (holding that the provision of life and health insurance coverage to current supervisor-employees did not require auditor approval).

We further noted that the only prevailing theory that would support the provision of post-retirement medical insurance benefits to retired supervisor-employees was that those benefits are a form of auditor-approved deferred compensation permissible under Section 606(a) (providing that supervisors may receive compensation determined by the board of auditors). *White Deer Township II*, 912 A.2d at 785–86. Therefore, because compensation under Section 606(a) required auditor approval, and there was nothing in the record to establish the existence or degree of auditor involvement in the award of post-retirement medical insurance benefits to supervisor-employees, we concluded that the parties' dispute could not be resolved on the record before us. Accordingly, we held that the reasoning offered by the trial court did not support its decision to sustain the demurrer to the Township's challenge, and that the Commonwealth Court erred in directing an award of declaratory relief in favor of the Township on the ground that Section 606(c) foreclosed Township employees from eligibility for post-retirement medical insurance benefits. We remanded to the Commonwealth Court for appropriate disposition.[9, 10]

On remand, the Commonwealth Court viewed the issues before it as whether the Township's challenge to the Ordinance was procedurally time-barred; whether supervisor-employees may receive post-retirement medical benefits under the Township Code; whether such benefits are deferred compensation; and how auditor approval or the lack thereof

9. We specifically noted that the Commonwealth Court should treat the trial court's position that Township employees in general are eligible for post-retirement medical benefits as the law of this case, because the Township did not challenge this proposition in its appeal.

10. We did not resolve the issue of whether the Township's challenge to the Ordinance was time-barred due to the limited grant of allocatur.

impacts this case. *White Deer Township v. Napp*, 929 A.2d 671 (Pa.Cmwlth.2007) (*White Deer Township III* ).

First, considering whether the Township's challenge to the Ordinance was procedurally time barred, the Commonwealth Court examined Section 5571 of the Judicial Code, 42 Pa.C.S. § 5571(c)(5), which provided that procedural challenges relating to the enactment of an ordinance must be raised within thirty days:

> *[Q]uestions relating to an alleged defect in the process of enactment or adoption of any ordinance,* resolution, map or similar action of a political subdivision ... *shall be raised by appeal or challenge commenced within 30 days after the intended effective date of the ordinance,* resolution, map or similar action. As used in this paragraph, the term "intended effective date" means the effective date specified in the ordinance, resolution, map or similar action or, if no effective date is specified, the date 60 days after the date the ordinance, resolution, map or similar action was finally adopted but for the alleged defect in the process of enactment or adoption.

42 Pa.C.S. § 5571(c)(5) (repealed 2008, July 4, P.L. 325, No. 40, § 1).[11] The Township argued that its challenge was substantive, based on the authority of the supervisors to enact the Ordinance, and it therefore was not required to challenge the Ordinance within thirty days. Appellants framed the Township's challenge in terms of whether, under Section 606, the supervisors obtained the required auditor approval of the post-retirement benefits, which they argued is a procedural challenge subject to the thirty-day statute of limitations. The Commonwealth Court agreed with the Township, reasoning that the Township's assertion that the supervisors needed auditor approval went directly to the substantive question of whether the supervisors had the authority under Section 606 to enact the Ordinance, and thus its challenge was not time-barred. *White Deer Township III*, 929 A.2d at 677.

11. The legislature deleted this section on July 4, 2008, *see* P.L. 325, No. 40, § 1, and re-codified its subject matter at 42 Pa.C.S. § 5571.1.

Turning to whether township supervisors who are also employees are eligible for post-retirement medical insurance benefits, the Commonwealth Court returned to Section 606 of the Township Code to answer the question. The Commonwealth Court viewed Section 606(c) as permitting supervisor eligibility for township-paid insurance only while they are "in office" or "in the employ of the township," 53 P.S. § 65606(c), and reasoned that it would defeat the purpose of this directive to allow supervisors to grant themselves medical insurance after they left office and the Township's employ. *White Deer Township III,* 929 A.2d at 679. As such, the Commonwealth Court held that Appellant supervisor-employees lacked the statutory authority to confer post-retirement medical insurance benefits upon themselves and their spouses, and the trial court erred in granting Appellants' preliminary objections and dismissing the Township's complaint. *Id.*[12]

■ Appellants appealed to this Court, and we accepted allocatur to determine whether the Township's complaint was time-barred, and, on the merits, whether the board of supervisors of a Second Class Township can provide post-retirement medical insurance, supplementing Medicare, to Township supervisor-employees, who have been employed by the Township for a minimum of twenty years. As this case poses questions of statutory construction, which are pure questions of law, our scope of review is plenary, and the standard of review is *de novo. Middletown Township v. Lands of Stone,* 595 Pa. 607, 939 A.2d 331, 335 n. 4 (2007).

■ The object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. *See* 1 Pa.C.S. § 1921(a); *In re Canvass of Absentee Ballots of November 4, 2003 General Election,* 577 Pa. 231, 843 A.2d 1223, 1230 (2004). In interpreting statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and

12. As a result of its disposition, the Commonwealth Court did not reach the issues of whether post-retirement medical insurance benefits are a form of deferred compensation or whether auditor approval of such benefits was required. *White Deer Township III,* 929 A.2d at 680, n. 13.

approved usage....", 1 Pa.C.S. § 1903(a), and, if possible, statutes must be construed so that every provision is given effect. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from all ambiguity, their plain language is generally the best indication of legislative intent. 1 Pa.C.S. § 1921(b); *Bowser v. Blom*, 569 Pa. 609, 807 A.2d 830, 835 (2002). When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters: the occasion and necessity for the statute, the circumstances under which it was enacted, the mischief to be remedied, the object to be attained, the former law, if any, including other statutes upon the same or similar subjects, the consequences of a particular interpretation, the contemporaneous legislative history, and legislative and administrative interpretations of such statute. 1 Pa.C.S. § 1921(c).

We first address Appellants' argument that the Township's complaint is time barred.[13] According to Appellants, the Township's challenge to the supervisors' authority to pass the Ordinance challenges whether the board of auditors was involved to the extent required by Section 606(a), and, as such, is focused upon procedural defects in the enactment. Therefore, according to Appellants, this procedural challenge is subject to the statute of limitations set forth in 42 Pa.C.S. § 5571(c)(5) ("questions relating to an alleged defect in the process of enactment or adoption of any ordinance ... shall be raised by appeal or challenge commenced within 30 days after the intended effective date of the ordinance ..."). The Township responds that it is not challenging the procedure by which the supervisors passed the Ordinance, but rather raises the substantive issue of whether Appellant supervisors had the statutory power to vote themselves post-retirement medical insurance benefits generally, and, therefore, 42 Pa.C.S. § 5571(c)(5) is inapplicable.

13. Because the Ordinance did not specify an effective date, it became effective in February, 1998, sixty days after it was adopted. *See* 42 Pa.C.S. § 5571(c)(5) (2002). The Township filed its challenge to the Ordinance in January, 2004.

■ The thirty-day statute of limitations imposed by 42 Pa.C.S. § 5571(c)(5) applies to "questions relating to an alleged defect in the process of enactment or adoption of any ordinance." As the plain language of the statute states, the thirty-day appeal period applies only to attacks based upon procedural defects in the enactment of the ordinance and does not prevent subsequent attacks on its substantive validity. *See Holsten v. West Goshen Township*, 56 Pa.Cmwlth. 283, 424 A.2d 997, 998 (1981); *Hodge v. Zoning Hearing Bd. of West Bradford Township*, 11 Pa.Cmwlth. 311, 312 A.2d 813 (1973). Therefore, under this statute, any individual who wishes to challenge an ordinance's validity on procedural grounds must raise his claim within thirty days of the ordinance's effective date, but a substantive challenge to an ordinance that does not implicate an alleged defect in the process of enactment or adoption does not have to be filed within thirty days. *Schadler v. Zoning Hearing Bd. of Weisenberg Township*, 578 Pa. 177, 850 A.2d 619 (2004). Accordingly, to determine the applicability of the thirty-day time bar imposed by 42 Pa.C.S. § 5571(c)(5), we must determine whether the Township's challenge related to an alleged defect in the process of enactment or adoption of the Ordinance.

The Township's challenge is that the Ordinance is invalid under Section 606(c) because the board of supervisors lacked the authority to provide for themselves post-retirement medical insurance benefits. The Township has not challenged the process by which the board of supervisors adopted the Ordinance. Rather, to the extent its challenge raises the question of whether the supervisors were required to obtain auditor approval of their receipt of post-retirement medical benefits, it goes directly to the substantive question of whether the supervisors had the authority to enact the Ordinance. This question does not implicate "an alleged defect in the process of enactment or adoption." *See* 42 Pa.C.S. § 5571(c)(5). Like the Commonwealth Court *sub judice*, we hold that that the Township is not barred from challenging Appellants' authority to pass the Ordinance. *See Holsten*, 424 A.2d at 998 ("a challenge based upon the Township's lack of statutory authori-

ty to enact the ordinance is a substantive question not subject to the 30–day appeal period.").[14]

Having determined that the Township's challenge to the Ordinance is not time-barred by 42 Pa.C.S. § 5571(c)(5), we turn to the merits of the substantive challenge. Appellants assert that the plain language of Section 1512(d) of the Township Code, 53 P.S. § 66512(d), *see supra* p. 749 ("The board of supervisors may contract with any insurance company ... to insure its supervisors under section 606, employes and their dependents under a policy or policies of group insurance ...") means that the board of supervisors can provide health insurance benefits for its supervisors and employees. Appellants argue that Section 606 dictates how those benefits are to be applied to supervisor-employees and is ambiguous.[15] In an effort to resolve this ambiguity, Appellants assert that health insurance for retired supervisor-employees is a form of compensation subject to auditor approval, and is governed by Section 606(a). According to their argument, Section 606(c) is not implicated at all because the challenged benefit is a retirement benefit, and Section 606(c) clearly applies solely to health insurance for supervisor-em-

**14.** Alternatively, Appellants assert that the Township's challenge is time barred by three separate statutory provisions: 53 P.S. § 65909 ("The board of supervisors or any elector or taxpayer of the township or any officer whose account is settled or audited by the board of auditors may appeal from any settlement or audit of the board of auditors to the court of common pleas within forty-five days after the settlement has been filed in the court of common pleas."); 42 Pa.C.S. § 5522(b)(1) (action against any officer of any government unit for anything done in the execution of his office must be commenced within six months); 42 Pa.C.S. § 5527(b) (any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years).

The trial court dismissed the Township's petition on preliminary objections. On remand, Appellants are free to raise any defense based on a statute of limitations in a responsive pleading pursuant to Pa. R.C.P. 1030. *See* Pa.R.C.P. 1028(a)(4) ("The defense of the bar of a ... statute of limitations can be asserted only in a responsive pleading as new matter under Rule 1030."). We did not grant allocatur to review the applicability of these statutory provisions.

**15.** Although they assert that Section 606 is ambiguous, Appellants do not point to any specific ambiguity.

ployees during their service or employment, and merely operates to exempt such health insurance from the requirement of auditor approval.[16] This distinction between all other forms of compensation (governed by Section 606(a)) and insurance plans for supervisors while in office or employment (governed by Section 606(c)) is demonstrated, according to Appellants, by the legislature's use of the prefatory phrase in Section 606(c): "[i]n addition to the compensation authorized under this section . . .". Appellants assert that this language demonstrates that the legislature recognized that health insurance plans generally are a form of compensation requiring auditor approval in accord with Section 606(a), except where the insurance applies to supervisors "while in office or while in the employ of the township," which, in accord with Section 606(c), does not require auditor approval. By enacting Section 606(c) and thereby removing group insurance benefits for supervisors while in office or in the employ of the Township from the general requirement of auditor approval for compensation contained in Section 606(a), Appellants assert that the legislature did not preclude a finding that post-retirement medical insurance benefits are compensation subject to auditor approval within Section 606(a).

By arguing that Section 606(c) does not preclude post-retirement medical insurance benefits for supervisor-employees, Appellants shift the focus of the dispute to Section 606(a), and assert that there is nothing in that subsection that excludes deferred compensation such as post-retirement medical insurance benefits for supervisor-employees. Appellants argue that before this case, the Commonwealth Court had already established that supervisor-employee compensation, as that term is used in Section 606(a), includes fringe benefits such as insurance and medical plans. *See In re Appeal of Muncy Creek Township,* 103 Pa.Cmwlth. 607, 520 A.2d 1241, 1245 n. 12 (1987) (stating that the term "compensation" as used in Section 606's predecessor, 53 P.S. § 65515, included health or life insurance coverage for supervisor-employees);

---

**16.** There is no argument that the benefits in question are a pension benefit under Section 606(b).

*Synoski v. Hazle Township,* 93 Pa.Cmwlth. 168, 500 A.2d 1282 (1985) ("The word 'compensation' under [former 53 P.S. § 65515] includes more than mere wages; it also includes fringe benefits such as insurance, pension, and medical plans and premiums."); *McCutcheon v. Commonwealth of Pa. State Ethics Comm'n,* 77 Pa.Cmwlth. 529, 466 A.2d 283, 286 (1983) (noting that retirement benefits are deferred compensation and, in effect, part of the salary of elected officials, citing *Retirement Bd. of Allegheny County v. McGovern,* 316 Pa. 161, 174 A. 400 (1934)).

Appellants further refer to a broader body of case law establishing that in the context of public employment, post-retirement benefits are generally considered deferred compensation. *See Commonwealth ex rel. Zimmerman v. Officers & Employees Retirement Bd.,* 503 Pa. 219, 469 A.2d 141 (1983) (holding that retirement provisions for public employees are deferred compensation); *Fairview Township v. Fairview Township Police Ass'n,* 795 A.2d 463, 470–71 (Pa.Cmwlth. 2002) (same); *Borough of Elizabethtown v. Elizabethtown Non–Supervisory Police Negotiating Comm.,* 719 A.2d 1144 (Pa.Cmwlth.1998) (holding that medical insurance benefits awarded in the future are deferred compensation for services rendered in the past); *City of Wilkes–Barre v. Wilkes–Barre Firefighters Ass'n, Local 104,* 142 Pa.Cmwlth. 168, 596 A.2d 1271 (1991) (holding that the statutory authorization to provide insurance for elected officers permitted the award of health insurance benefits for retirees); *Township of Tinicum v. Fife,* 95 Pa.Cmwlth. 516, 505 A.2d 1116 (1986) ("In Pennsylvania, the nature of retirement provisions for public employees is that of deferred compensation for services actually rendered in the past, thus reflecting contractual rights."). Therefore, according to Appellants, post-retirement medical benefits are deferred compensation permitted under Section 606(a) subject to auditor approval. Because the record is silent on the role of the board of auditors in this matter, Appellants advocate that the appropriate course is to remand to the trial court for further proceedings regarding the issue of auditor approval.

Appellants assert that if post-retirement benefits are available to employees generally, as this Court has held is law of the case, then there is no reason to treat the compensation available to supervisor-employees under Section 606(a) any differently, provided the benefits are approved by the board of auditors. Finally, Appellants argue that it is of no moment that they retired shortly after voting themselves post-retirement medical benefits. Relying on *Newport Township*, 532 A.2d 1263, Appellants argue that as long as they qualified at the time of retirement, the benefits were authorized and cannot be rescinded.

The Township asserts that there is nothing ambiguous about Section 606, and nowhere in the statute did the legislature authorize supervisor-employees to provide post-retirement medical insurance benefits for themselves. According to the Township, Section 606(a) subjects supervisor compensation to auditor approval, and Section 606(c) exempts from auditor approval health insurance for supervisors while in office or employed by the Township. Neither section, according to the Township, provides a basis for finding that post-retirement medical insurance is permissible.

According to the Township, the basis for treating supervisor-employees differently from non-supervisor-employees is the language of Section 606 and the manifest intent of the legislature to limit self-interested decision making by supervisors. *See White Deer Township II*, 912 A.2d at 784. The Township focuses on the fact that Appellants voted themselves retirement benefits on the eve of their own retirement. The Township distinguishes this case from those that have held that deferred compensation includes fringe benefits such as post-retirement medical insurance by noting that Appellants herein passed an ordinance authorizing the benefits under terms for which they already qualified. In other words, there was no *quid pro quo*, no exchange of services for deferred compensation. Rather, the award of benefits was for past performance already completed, and did not motivate or was not in exchange for service or employment.

 Having established the parties' respective positions on the issue of whether Appellants were authorized by Section 606 to pass the Ordinance granting themselves post-retirement medical insurance benefits, we now turn to the merits. We begin with the general fundamental principal that municipalities are created by the state and as such, may do only those things which the state legislature has placed within their power in enabling statutes. *Naylor v. Township of Hellam*, 565 Pa. 397, 773 A.2d 770 (2001); *Shirk v. City of Lancaster*, 313 Pa. 158, 169 A. 557 (1933); *Knauer v. Commonwealth*, 17 Pa.Cmwlth. 360, 332 A.2d 589, 590–91 (1975). Moreover, an ordinance must be in conformity with the provisions of the enabling statutes; if it conflicts therewith it is void. *Genkinger*, 84 A.2d at 304. Further, when public officials have a direct pecuniary interest in the matter being voted on, the enabling legislation which gives them the power to vote on such a matter must be strictly construed. *Id.*

 The enabling legislation authorizing the Township to provide health insurance benefits provides as follows:

(d) The board of supervisors may contract with any insurance company, nonprofit hospitalization corporation or nonprofit medical service corporation to insure its supervisors under section 606, employes and their dependents under a policy or policies of group insurance covering life, health, hospitalization, medical service or accident insurance. This provision is subject to the following qualifications:

(1) Elected officials, except supervisors under section 606, and appointed officials who are not employes of the township are not eligible for participation in any life, health, hospitalization, medical service or accident insurance coverage contract paid in whole or in part by the township.

53 P.S. § 66512. This section authorizes the board of supervisors to contract with an insurer to provide, *inter alia,* medical benefits for its employees, subject to a qualification relating to elected officials who are not supervisors or employees. This section plainly directs that supervisors may be insured only in

accord with Section 606. As noted, the relevant provisions of Section 606 provide:

§ 65606. Compensation of supervisors

a) Supervisors may receive as compensation an amount established by ordinance not in excess of the following:

| Township Population | Annual Maximum Compensation |
|---|---|
| not more than 4,999 | $1,875 |
| 5,000 to 9,999 | $2,500 |
| 10,000 to 14,999 | $3,250 |
| 15,000 to 24,999 | $4,125 |
| 25,000 to 34,999 | $4,375 |
| 35,000 or more | $5,000 |

Salaries are payable monthly or quarterly for the duties imposed by this act. The population is determined by the latest official census figures.... *The compensation of supervisors, when employed ... in any employe capacity* not otherwise prohibited by this or any other act, *shall be determined by the board of auditors, at an hourly, daily, weekly, semi-monthly or monthly basis,* which shall be comparable to compensation paid in the locality for similar services. The board of supervisors may establish a mileage allowance ... to be paid to officers and employes for the use of a personal vehicle when required and actually used for authorized township business. No supervisor may receive compensation as an employe for attending a meeting of the board of supervisors. Supervisors may continue to be compensated under prior law until such time as an ordinance is enacted under this act. *Any change in salary, compensation or emoluments* of the elected office becomes effective at the beginning of the next term of the supervisor . . .

(b) Any benefit provided to or for the benefit of a supervisor employed by the township in any employe capacity under this act in the form of inclusion in a pension plan paid for in whole or in part by the township is compensation within the meaning of this act to the extent that benefit is paid for by the township and is determined by the board of auditors;

\* \* \*

(c) *In addition to the compensation authorized under this section, supervisors while in office or while in the employ of the township may be eligible for inclusion in township-paid insurance plans . . .*

53 P.S. § 65606(a)-(c). Each of the three subsections of Section 606 apply to different types of benefits. Section 606(a) concerns compensation and salaries for supervisors and compensation for supervisor-employees; Section 606(b) deals with pension plans for supervisor-employees; and Section 606(c) applies to insurance for supervisors "while in office or while in the employ of the township." Because municipalities can only do what the legislature has empowered them to do, *Naylor*, 773 A.2d 770, *Shirk*, 169 A. 557, the only compensation which supervisors are permitted is that prescribed by Section 606.

The plain language of Section 606(c) indicates that supervisor-employees may be eligible for township paid insurance plans while in office or in the employ of the township without the requirement of auditor approval. 53 P.S. § 65606(c). In *White Deer Township II*, 912 A.2d 781, we held that although Section 606(c) does not expressly forbid supervisors who are employees from receiving post-retirement health insurance benefits, it does not operate to control the conferral of such benefits. *Id.* at 785. Therefore, we have already established that Section 606(c) does not answer the question of whether supervisor-employees may be eligible for post-retirement medical benefits.[17]

▆▆▆ Therefore, we now turn our attention to Section 606(a) to address Appellants' argument that the post-retirement medical insurance benefits are a form of deferred com-

---

**17.** The Commonwealth Court held that Section 606(c) limits supervisor participation in insurance plans to the time they are in office or employed by the township, and that it would defeat the purpose of Section 606(c) to allow supervisors to grant themselves medical insurance after they left office or employment. The purpose of Section 606(c), however, is to exempt insurance for supervisors while in office or employed from the requirement of auditor approval, not to limit the supervisors' ability to participate in insurance plans to the time they are in office or employed.

pensation permissible, but subject to auditor approval. *See White Deer Township II*, 912 A.2d at 786 (inviting resolution on the basis that Section 606(a) authorizes post-retirement health insurance for supervisor-employees as auditor-approved compensation).[18] On this point, Appellants argue that auditor approved compensation for supervisor-employees under Section 606(a) includes post-retirement medical insurance benefits as deferred compensation. As support for this position, as noted above, Appellants rely on cases construing the term "compensation" to include fringe benefits, and note that it makes little sense to construe compensation as it relates to supervisor-employees under Section 606(a) to exclude post-retirement medical benefits where employees generally are eligible for such post-retirement medical benefits. The Township offers no argument on the interpretation of compensation in Section 606(a), arguing instead that the language of Section 606(c) precludes insurance benefits for supervisors who are no longer in office or employed by the Township.[19]

 The Township Code does not define the term compensation. As noted previously, therefore, words and phrases should ordinarily be understood according to their common and approved usage. *See* 1 Pa.C.S. § 1903(a). In addition, we must give effect to the meaning of each distinct word as chosen. *See Freundt v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 584 Pa. 283, 883 A.2d 503 (2005); *Rossi v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 580 Pa. 238, 860 A.2d 64, 67 (2004).[20] In

18. On remand, the Commonwealth Court did not address whether post-retirement medical benefits are deferred compensation, but instead returned to Section 606(c) to conclude that supervisor-employees are not eligible for post-retirement medical insurance benefits.

19. The Township's position on this point is contrary to our prior opinion in this case, which, as noted, made clear that Section 606(c) does not answer the question of whether the supervisors can receive post-retirement medical benefits as auditor-approved compensation.

20. In dissent, Chief Justice Castille suggests that the requirement to construe strictly the statute against the self-interested supervisors precludes our examination of external sources to ascertain the meaning of "compensation" in Section 606. To comply with our obligation to construe strictly the statute, however, the Statutory Construction Act

its first sentence, Section 606(a) establishes the maximum annual compensation available to supervisors *qua* supervisors, and, in the second sentence, directs that salaries are payable monthly or quarterly. Further, Section 606(a) directs in its fourth sentence that the compensation of supervisors who are also employees shall be determined by the board of auditors at an hourly, daily, weekly, semi-monthly, or monthly basis. Finally, near the end of Section 606(a), the legislature refers to changes in salary, compensation, or emoluments. The legislature, therefore, referred to salaries and compensation available to supervisors, compensation available to supervisor-employees, and salary, compensation and emoluments. According to this legislative construct then, the terms "salaries" and "compensation" have discrete meanings. This indicates that we cannot construe compensation as being the same thing as salary. *See Freundt,* 883 A.2d at 506 ("We must give effect to the meaning of each distinct word as chosen."). Beyond this, it is not clear from the statute what the term compensation includes. Reading Section 606(a), we cannot say with certainty that compensation includes or excludes the post-retirement benefit provided by the Ordinance. We will therefore examine the treatment of the term compensation in case law and in light of the legislative history of Section 606.

To understand the meaning of compensation in Section 606(a) it is helpful to review the legislative changes this section has undergone. Before the 1988 amendment to Section 606, the former statute, 53 P.S. § 65515, provided that the compensation of supervisors who were also employees had to be fixed by the board of auditors. There were no subsections to 53 P.S. § 65515 dealing with pensions or township-paid insurance for supervisors while in office or township employment, as there are for the current Section 606. *See* 53 P.S. § 65606(b), (c).

Interpreting the former provision of 53 P.S. §§ 65515 (providing for auditor-approved compensation for supervisor-em-

directs us to engage in statutory construction by, *inter alia,* examining the legislative history of the code and the treatment of the term "compensation" in prior law. 1 Pa.C.S. § 1921(c).

ployees), the Commonwealth Court held, contrary to the Commonwealth Court in the instance case, that this section empowered supervisors to provide retirement insurance benefits for themselves in their capacity as employees as deferred compensation subject to auditor approval. In *McCutcheon,* 466 A.2d at 286, the Commonwealth Court specifically interpreted the term "compensation" in former 53 P.S. § 65515 to include retirement benefits as deferred compensation. Although this section, like Section 606(a), required that compensation be provided "per hour, per day ... or monthly," the Commonwealth Court rejected the argument that this language indicated the legislature's intention to limit compensation to wages. Rather, it noted that the term "compensation" encompassed more than mere wages, and cited our precedent for the proposition that retirement benefits are deferred compensation. *McCutcheon,* 466 A.2d at 286 (relying on *McGovern,* 174 A. 400 (generally characterizing retirement benefits as deferred compensation)). *See also Muncy Creek Township,* 520 A.2d at 1245 n. 12 (stating that the term "compensation" as used in former 53 P.S. § 65515 includes health or life insurance coverage provided for supervisor-employees); *Synoski,* 500 A.2d at 1285 ("The word 'compensation' under [former 53 P.S. § 65515] includes more than mere wages; it also includes fringe benefits such as insurance, pension, and medical plans and premiums."). Prior to the 1988 amendment to Section 606, therefore, the Commonwealth Court had held that the term compensation encompassed retirement benefits, and that participation by supervisor-employees in township-paid life and health insurance plans was permissible subject to auditor approval.

▮ In 1988 the legislature amended Section 606 (formerly 53 P.S. § 65515) to add subsections (b) and (c). The text of the former 53 P.S. § 65515 became Section 606(a), which continued to provide that the compensation of supervisor-employees must be fixed by the board of auditors. Subsection (b) identified pensions as a form of auditor-approved compensation for which supervisor-employees were eligible, subject to specific conditions. Subsection (c) identified the requirements

for the participation by supervisors in township paid insurance while in office or the employ of the township. Specifically, where the Commonwealth Court had previously interpreted all forms of insurance to be compensation subject to auditor approval, the legislature carved out an exception from the requirement of auditor approval only for those township-paid insurance plans for supervisors while in office or the employ of the township. 53 P.S. § 65606(c). Accordingly, participation in insurance plans by supervisors while in office or employed by the township does not require auditor approval pursuant to Section 606(c). All other forms of compensation remain subject to the requirement of auditor approval pursuant to Section 606(a). 53 P.S. § 65606(a). It is noteworthy that the legislature did not amend Section 606(a) to limit auditor-approved compensation in any way, leaving intact the Commonwealth Court precedent interpreting auditor-approved compensation to include deferred compensation. *See Birth Ctr. v. St. Paul Companies, Inc.*, 567 Pa. 386, 787 A.2d 376, 387 (2001) ("In enacting a statute, the legislature is presumed to have been familiar with the law, as it then existed and the judicial decisions construing it") (quoting *Polselli v. Nationwide Mutual Fire Insurance Co.*, 23 F.3d 747, 751 (3d Cir. 1994)); *City of Philadelphia v. Clement & Muller, Inc.*, 552 Pa. 317, 715 A.2d 397, 399 (1998) ("The legislature is presumed to be aware of the construction placed upon statutes by the courts"). Had the legislature intended to make changes in the law with respect to compensation for supervisor-employees, it could have done so expressly.

Moreover, the Commonwealth Court has continued to hold outside of the context of the Township Code that compensation includes more than mere salary or wages. *See Fairview Township*, 795 A.2d 463 (noting generally that "the nature of retirement provisions for public employees is that of deferred compensation for services actually rendered in the past"); *City of Wilkes–Barre*, 596 A.2d at 1273 (interpreting the Third Class City Code, 53 P.S. § 37403.53, which empowered city council to insure its elected or appointed officers, officials and employes under a policy of group insurance, as authorizing the

city to provide health insurance benefits to retirees); *Township of Tinicum*, 505 A.2d 1116 (holding that medical insurance benefits for retirees are a form of deferred compensation for services actually rendered in the past).

Although this Court has not interpreted the term "compensation" in Section 606(a) to hold that auditor-approved compensation includes post-retirement medical benefits, we have more generally held that post-retirement benefits are a form of deferred compensation. *See Zimmerman*, 469 A.2d at 142 ("In Pennsylvania we have rejected the view that pension benefits are mere gratuities or expectancies subject to the whim of the munificent governmental employer. To the contrary, it is the well settled law of this jurisdiction that the nature of retirement provisions for public employees is that of deferred compensation for services actually rendered in the past."); *Commonwealth ex rel. Zimmerman v. Officers and Employees Ret. Bd.*, 501 Pa. 293, 461 A.2d 593, 595 (1983) ("It has long been recognized in Pennsylvania that the nature of retirement provisions for public employees is that of deferred compensation for service actually rendered in the past."); *Bellomini v. State Employees' Ret. Bd.*, 498 Pa. 204, 445 A.2d 737, 739 (Pa.1982) (plurality opinion) (same); *Lowe v. Jones*, 414 Pa. 466, 200 A.2d 880, 881–82 (1964) (". . . pensions are not gratuities but payments made as deferred compensation for services already rendered. A wage-earner's pension is not something which miraculously falls to him as manna from the sky. It is the fruit of the tree which he has planted, which he has nurtured with his continuous loyal service and watered with the sweat of his years of dedicated work."). *Accord McKenna v. State Employees' Ret. Bd.*, 495 Pa. 324, 433 A.2d 871 (1981); *Harvey v. Ret. Bd. of Allegheny County*, 392 Pa. 421, 141 A.2d 197 (1958); *Wright v. Ret. Bd. of Allegheny County*, 390 Pa. 75, 134 A.2d 231 (1957); *Baker v. Ret. Bd. of Allegheny County*, 374 Pa. 165, 97 A.2d 231 (1953); *McBride v. Ret. Bd. of Allegheny County*, 330 Pa. 402, 199 A. 130 (1938); *Ret. Bd. of Allegheny County v. McGovern*, 316 Pa. 161, 174 A. 400 (1934).

Because of this extensive case law, and the lack of any indication that the legislature intended to upset this construct or remove deferred compensation from the ambit of Section 606(a), we conclude that the board of supervisors was authorized to approve Township-paid, post-retirement medical insurance benefits for its supervisor-employees as a form of deferred compensation under Section 606(a). To conclude otherwise would leave supervisors without the ability to obtain these benefits. We can discern no reason to interpret Section 606(a) to exclude deferred compensation from the compensation available to supervisor-employees.

 In concluding that the Township Code grants supervisors the general power to authorize the payment of township funds for post-retirement medical insurance benefits, we must also consider the parallel requirement in Section 606(a) that the township auditors shall fix the amount of this compensation where the supervisors serve as employees. The only remaining question in regard to the validity of the Ordinance as it applies to supervisor-employees, therefore, is whether the auditors approved the benefit in accord with Section 606(a). In *Genkinger*, we recognized that the legislature may establish a procedure for public officials to obtain compensation. In such cases, the enabling legislation "would have to be strictly complied with, and where public officials with a possible dual interest are concerned, strictly construed." *Genkinger*, 84 A.2d at 306. We consider that strict standard as we note that the legislature has expressly stated that the compensation of supervisor-employees "shall be determined by the board of auditors...." 53 P.S. 65606(a). The authority of the board of supervisors under Section 1512(d) and Section 606(a) to enter into insurance contracts for supervisors-employees is not sufficient to legitimatize the supervisors' actions in purchasing these policies for themselves, in the absence of affirmative action by the board of auditors in accord with Section 606(a). As we noted in our prior decision in this case, the General Assembly has removed certain matters involving the pecuniary interest of supervisors to a board of auditors in order to curtail decision making by

local supervisors regarding their own self-interest. *White Deer Township II*, 912 A.2d at 785. Section 606 demonstrates that the legislature did not intend any decision involving compensation, other than health insurance for supervisors while in office or employed as directed by Section 606(c), to be relegated solely to the supervisors benefiting from it. *See id.* at 786. The purpose of the requirement of auditor approval in Section 606(a) is to prevent supervisors from enriching themselves at township expense by setting their own compensation. *See Synoski*, 500 A.2d 1282. Accordingly, we must remand to the trial court for further proceedings.[21]

Finally, we note that the Township focuses on the fact that Appellants enacted the Ordinance on the eve of their own retirements. Appellants passed the Ordinance providing post-retirement medical benefits for all employees with twenty years of service on December 18, 1997. At this time, Napp had been employed by the Township for almost thirty years; Caris for over twenty-seven years; and Hartranft for over nineteen years. At the time they passed the Ordinance, therefore, Napp, Caris, and Hartranft had already completed the requirement of twenty years of employment (in Hartranft's case, his twenty-year anniversary of employment was just two weeks following the Ordinance's enactment). Napp retired on December 30, 1997, Hartranft on June 10, 1998, and Caris on December 30, 1999. Appellants thus remained employed by the Township for ten days, six months, and two years, respectively, after they passed the Ordinance.

The dissenting justices also focus on the timing of the Ordinance in relation to Appellants' retirements. According to the dissents, Appellants did not work for the Township for twenty years in exchange for post-retirement medical insurance benefits; rather, they worked for twenty years, then gratuitously voted for themselves to receive retroactive compensation. We join the dissents' dismay about Appellants'

21. The requirement of auditor approval for compensation in Section 606(a) addresses the Township's and the dissenting justices' concern that Appellants were self-interested supervisors. By assigning to the board of auditors the obligation to determine compensation, the legislature has curtailed decision making by self-interested supervisors.

conduct in this regard. The issue before us, however, is not one of equity, but rather, one of law: whether a Second Class Township can provide post-retirement medical insurance to its supervisor-employees with twenty years of employment. We hold that it can.

 Moreover, at the time they retired, if each Appellant-supervisor had complied with the conditions necessary to receive the post-retirement benefits authorized by the Ordinance, then they were eligible to receive them. *See Bellomini*, 445 A.2d at 739–40 (holding that where Commonwealth employees had complied with all conditions necessary to receive their retirement allowances, they were eligible to receive them); *Osborne v. United Gas Improvement Co.*, 354 Pa. 57, 46 A.2d 208 (1946) (allowing past services of a then-current employee to be taken into account when formulating a retirement benefits program); *Newport Township*, 532 A.2d 1263 (rejecting the township's argument that an employee had to complete all required years of service subsequent to the passage of an ordinance providing post-retirement insurance coverage). If, on the other hand, the Ordinance does not permit Appellants' receipt of post-retirement benefits because Appellants had already neared completion of twenty years' of service, as the dissenting opinions assert, then Appellants may be subject to a surcharge by the auditors. *See* 53 P.S. § 65907.[22]

Based on the foregoing, the Commonwealth Court erroneously concluded that pursuant to Section 606(c) Appellants were not authorized to enact the Ordinance, and thus failed to consider the authority under Section 606(a) to do so. Therefore, the order of the Commonwealth Court is reversed. The board of supervisors was empowered to grant to supervisor-

22. The auditors, as elected officials, owe a duty to monitor the financial affairs of the Township. 53 P.S. § 65901, *In re Audit of Middle Smithfield Tp.*, 701 A.2d 793, 794 (Pa.Cmwlth.1997). They can surcharge supervisors for any loss to the Township caused by the supervisors' acts in violation of the law or beyond the scope of their duty, 53 P.S. § 65907, and their decisions in this regard are subject to appeal by the board of supervisors or any elector or taxpayer of the township, 53 P.S. § 65909.

employees post-retirement medical benefits as a form of deferred compensation in accord with the terms of Section 606(a), including auditor approval. Thus, as noted in our prior decision, because the record before us does not disclose what, if any, role the board of auditors played in approving the post-retirement medical benefits granted by the Ordinance, we remand to the Commonwealth Court for disposition consistent with this opinion. Jurisdiction relinquished.

Justices SAYLOR, TODD, McCAFFERY and GREENSPAN join the opinion.

Chief Justice CASTILLE files a dissenting opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CASTILLE joins.

Chief Justice CASTILLE, dissenting.

I respectfully dissent.

"It is a well and wisely established principle of public policy in Pennsylvania that a public official may not use his official power to further his own interests." *Consumers Educ. & Protective Ass'n [CEPA] v. Schwartz*, 495 Pa. 10, 432 A.2d 173, 177 (1981); *Eways v. Reading Parking Auth.*, 385 Pa. 592, 124 A.2d 92, 97 (1956); *Meixell v. Borough Council of Borough of Hellertown*, 370 Pa. 420, 88 A.2d 594, 594 (1952);and *Genkinger v. City of New Castle*, 368 Pa. 547, 84 A.2d 303, 305 (1951) (emphasis omitted). Indeed, the principle is at least nearly a century old,[1] and it is enshrined in a provision of our Constitution, *see* PA. CONST. art. III, § 13 (requiring every member of General Assembly to disclose any "personal or private interest in any measure or bill proposed or pending ... to the House of which he is a member" and prohibiting him from voting thereon). Pursuant to this long-

---

1. *See Commonwealth ex rel. Whitehouse v. Raudenbush*, 249 Pa. 86, 94 A. 555, 555 (1913) ("There is a general rule of law that no member of a governing body shall vote on any question involving his own character or conduct, his right as a member, or his pecuniary interest, if that be immediate, particular and distinct from the public interest.") (internal quotation marks omitted).

standing prohibition of public servant self-dealing, state legislators and municipal council members alike are "disqualified from voting in proceedings involving [their] personal or pecuniary interest[s]." *Commonwealth ex rel. McCreary v. Major,* 343 Pa. 355, 22 A.2d 686, 689 (1941); *Commonwealth ex rel. Whitehouse v. Raudenbush,* 249 Pa. 86, 94 A. 555, 555 (1913); *accord McAdoo Borough v. Pa. Labor Relations Bd.,* 506 Pa. 422, 485 A.2d 761, 766 (1984); *CEPA,* 432 A.2d at 176–77; *Meixell,* 88 A.2d at 594; *Genkinger,* 84 A.2d at 306; *Reckner v. Sch. Dist. of German Twp.,* 341 Pa. 375, 19 A.2d 402, 403 (1941). Indeed, "[i]t is against public policy for a representative of a municipality to vote in its legislative body on any matter which affects him individually." *CEPA,* 432 A.2d at 176; *McCreary,* 22 A.2d at 689; *Whitehouse,* 94 A. at 555. "[T]he prohibition is so strictly enforced that if a measure is passed by the vote of one or more persons who have a direct private interest therein, no matter how beneficial the ordinance may be, it is void." *Genkinger,* 84 A.2d at 306; *accord CEPA,* 432 A.2d at 177; *Reckner,* 19 A.2d at 403.

As this Court has consistently explained, the reasons for the prohibition are "obvious—a man cannot serve two masters at the same time, and the public interest must not be jeopardized by the acts of a public official who has a direct pecuniary or personal or private interest which is or may be in conflict with the public interest." *Eways,* 124 A.2d at 98; *Genkinger,* 84 A.2d at 306 (emphasis omitted); *accord Whitehouse,* 94 A. at 555. The councilman "is a trustee for the municipality." *CEPA,* 432 A.2d at 176–77; *Meixell,* 88 A.2d at 595; *McCreary,* 22 A.2d at 689; *Reckner,* 19 A.2d at 403; *Whitehouse,* 94 A. at 555. As the beneficiary of the trust, the municipality "has the right to [the councilman's] best judgment in everything that appertains to [municipal] business or welfare, unaffected and unprejudiced by anything which might inure to [the councilman's] own interest as an individual." *Reckner,* 19 A.2d at 403; *Whitehouse,* 94 A. at 555.

Given the longstanding, comprehensive, and oft-invoked vitality of the prohibition of public servant self-dealing, we must presume that the General Assembly is cognizant of the princi-

ple when enacting legislation. *See McCreary,* 22 A.2d at 690. Of course, the General Assembly "has the inherent power to declare the public policy of the Commonwealth," and therefore may "overthrow [even] such a wholesome and salutary rule of the common law as that precluding a public servant from simultaneously representing both himself and his constituents." *CEPA,* 432 A.2d at 177 (quoting *McCreary,* 22 A.2d at 689 (quoting *Reckner,* 19 A.2d at 403)). Nevertheless, in order to find a legislative derogation from the salutary prohibition of public servant self-dealing, we must find an "explicit direction" on the part of the General Assembly. *Id.* "[U]nless the intention is clear, the power will be denied, because of its exceptional and extraordinary character." *CEPA,* 432 A.2d at 177 (quoting *McCreary,* 22 A.2d at 689). For the same reason, even if we find such explicit direction and therefore recognize the exceptional power, we uphold an act of public servants affecting their own personal or pecuniary interests only after: (1) strictly construing the power; and (2) ensuring that the public servants strictly complied with the power. *CEPA,* 432 A.2d at 178; *Genkinger,* 84 A.2d at 306.

Instantly, the Majority Opinion sets forth a thorough and plausible analysis explaining why "it is not clear from the statute what the term compensation includes" (Majority Op. at 588, 985 A.2d at 761), and appellants concede that the statute is ambiguous in this respect (*see* Appellants' Brief at 16, 20). It may well be that this Court "cannot say with certainty that compensation includes or excludes the post-retirement benefit provided by the Ordinance." Majority Op. at 588, 985 A.2d at 761; *see also id.* at 22 (noting that Second Class Township Code does not define "compensation"). In other words, the General Assembly has not provided "explicit direction" on the question. Nevertheless, despite acknowledging that the existence of appellants' self-interest requires strict construction here (*see id.* at 19), the Majority fails to strictly construe the statute but, instead, proceeds to external sources, examining the legislative history of the relevant provisions of the Second Class Township Code and the treatment of the term "compensation" in case law. It is here that I part ways with the

Majority, for strictly construing the compensation power should require us to find that the Code does not explicitly include the post-retirement benefit provided by the Ordinance.

As stated in *Fairview Township v. Fairview Township Police Association*, 795 A.2d 463 (Pa.Cmwlth.2002), *aff'd per curiam*, 576 Pa. 226, 839 A.2d 183 (2003), upon which appellants rely: "[W]hen a person undertakes employment, there is usually a trade-off between present compensation and deferred compensation that is activated at retirement. The employe[e] agrees to accept less during his active employment in exchange for benefits during his retirement." *Id.* at 470 (internal quotation marks omitted). Thus, post-retirement medical benefits "are deferred compensation for the compensation forgone during active employment in exchange for benefits and security upon retirement." *Id.* Such benefits are, in other words, "the fruit of the tree which he [the employee] has planted, which he has nurtured with his continuous loyal service and watered with the sweat of his years of dedicated work." *Lowe v. Jones*, 414 Pa. 466, 200 A.2d 880, 882 (1964).

Tellingly, this *quid pro quo* conception of work in general—and post-retirement medical benefits in particular—is reflected in the language of the very Ordinance at issue in this case. As quoted in a footnote in the Majority Opinion, the Ordinance's preamble provided as follows:

WHEREAS WHITE DEER TOWNSHIP, UNION COUNTY, PENNSYLVANIA, has and continues to employ persons to perform services for the Township, and

WHEREAS, White Deer Township, Union County, Pennsylvania, desires to remain competitive in the workplace so that it may continue to **attract** qualified people to work for it, and

WHEREAS, White Deer Township, Union County, Pennsylvania, feels that medical insurance is a benefit that enhances its ability to **attract** qualified people as employees.

Reproduced Record 16a (emphasis added). Notably (and appropriately) absent in the Ordinance's preamble is that post-retirement medical benefits were needed to help **retain** as

well as attract employees. Such a motivation for passing this Ordinance, of course, would have been utterly inconsistent with the traditional understanding of post-retirement medical benefits as described above.

Moreover, even if the postulated desire to retain employees had been a purpose of the Ordinance, it certainly did not have the desired effect on the three employees *sub judice,* who retired, respectively, twelve days, two years, and six months after they passed the Ordinance. This duck is both waddling and quacking. In particular, when the Ordinance was passed on December 18, 1997, Mr. Napp was a thirty-year employee of the Township who would retire twelve days later; Mr. Caris was a thirty-one year employee who would retire two years later; and Mr. Hartranft was an employee two weeks short of his twenty-year anniversary date (and thus full "vesting" of his new-found post-retirement medical benefit right) who would retire six months later.[2]

Moreover, this case is thus obviously distinguishable from *Newport Township v. Margalis,* 110 Pa.Cmwlth. 611, 532 A.2d 1263 (1987), cited by appellants, in which the Commonwealth Court held that a thirty-four-year employee was eligible for post-retirement medical benefits under a resolution granting such benefits to employees retiring after at least fifteen years of service even though he did not accumulate fifteen additional years of service after the resolution was passed. Leaving aside the fact that he retired a full decade after the resolution

**2.** The timing of the supervisors' decisions to grant themselves post-retirement medical benefits—and, in relatively quick succession, to begin earning them—is telling in another respect. Although the parties overlook the fact, by completing their service as supervisors two weeks after passing the Ordinance in December 1997, Messrs. Napp and Caris avoided the prospect of answering to their employers—the Township's voters—in the next municipal election, and, although Mr. Hartranft remained in office for eighteen months after voting for the Ordinance, it appears that the same can be said for him. *See* Majority Op. at 567–68, 985 A.2d at 748 (noting that Mr. Hartranft was first elected in 1977 and served continuously thereafter); 53 P.S. § 65403(a) (providing for six-year terms for supervisors of second-class townships). Therefore, by waiting until 1997 to vote themselves post-retirement medical benefits, the three supervisors were able to benefit from the controversial decision without running the risk of being unseated.

was passed, the employee in *Newport Township* was not also a supervisor (and thus did not help pass the resolution); therefore, that case has no bearing on the self-interest issue before this Court today.

Granted, by serving the Township for more than twenty years, the supervisors *sub judice* each undoubtedly planted, nurtured, and watered their respective trees. But that is not the issue. For nearly all their years of service—periods amounting to approximately 99.9%, 93.5%, and 97.5% of their respective tenures with the Township—these supervisors were compensated based on terms that included the absence of post-retirement medical benefits, and they knew exactly what their benefits were. The provision of post-retirement medical benefits was simply not a term that the supervisors bargained for when they agreed to serve or that "attract[ed]" them to work for the Township. Thus, by passing the Ordinance on their way out of the door, the supervisors essentially were helping themselves to more than just the fruit of their own labors. In light of the foregoing, even if, after strictly construing the Second Class Township Act, I agreed with the Majority that the Act provides supervisors the power to grant themselves post-retirement medical benefits, I would not find that the supervisors *sub judice* strictly complied with such power. Therefore, I would affirm the Commonwealth Court's determination that these supervisors lacked the authority to confer post-retirement medical benefits upon themselves and their spouses.[3]

Justice EAKIN, dissenting.

I join Chief Justice Castille's dissent. This duck not only waddles and quacks, as the Chief Justice points out, it is retroactively feathering its own nest with the down of others.

The majority spends much time determining post-retirement health benefits may be included in the term "compensation," a conclusion with which I do not disagree. However,

---

**3.** With respect to the Majority's other holding in this case, I agree that the Township's challenge to the Ordinance is not procedurally time-barred.

compensation is something earned; in this case, it is a consideration not earned. It is nothing but a gift—a gratuitous favor done by officials for themselves, a modification of terms of employment long after service has been rendered. It is not deferred compensation; it is retroactive compensation.

Municipal employee or municipal official, deferred or not, compensation is something agreed upon for work performed or service rendered; it is an agreement that "you do this, and you will be paid this much." Compensation is not something retroactively awarded; compensation is determined going in, not coming out. This is an *ex post facto* raise, a manufactured bonus never bargained for, an award of significant benefits never contemplated by either payor or payee when service was provided. This is like voting oneself a gold watch upon retirement, and a Rolex at that.

If municipal officials wish to allow employees to earn post-retirement benefits as part of their compensation, they may agree to do so. However, they may not award themselves such benefits *ex post facto*—this is not compensation. This scheme is nothing more than a windfall given by those officials to themselves in the twilight of their tenure. It is nothing more than a retroactive 20–year raise, never bargained for, never contemplated, never earned. I repeat, this is not deferred compensation; it is retroactive compensation, and that is not permissible.

Chief Justice CASTILLE joins this dissenting opinion.